Good morning. May it please the court. My name is Thomas Branstrader. I represent Brendan Chases. As this court has said, strictly speaking, there is never a real Brady violation unless it can be shown that there is a reasonable probability that the non-disclosure of the evidence is true. In the situation before this court, Mr. Chases was not allowed to present an entrapment defense. It is our position that the... He did present an entrapment defense. What I thought your point was is that he could have made it much more persuasive if he had had the evidence. He had had... I am not sure how to fill in the blank. I guess if he had had Hernandez's phone call list earlier. Yes, Judge. And what else? Well, if the court recalls his telephone chart that the government introduced through Detective Niccolo. This is the master list? What is it called? Yes, Judge. I can't remember the exact exhibit number, but it was in Niccolo's rebuttal... Master telephone chart, is that it? Yes. And those were... That was a list of phone calls from Chases's phone records that was post-conviction discovered that was only the phone calls that Chases accepted. Now, with those phone calls... I'm sorry. So this... What we have is a master telephone chart that was available at trial? In the middle of trial. On the second day of trial. Okay. The government told the defense that they were going to have Niccolo testify to this summary. Okay. So this is the list that was made available in the middle of trial. And your burden now is to say what? That there were other phone calls omitted? There were dozens of other phone calls. Okay. Where do we find those? Those were not in... Those were in all post-conviction proceedings. Those were not in the trial court. We couldn't find in the record where there's a reference to where we find those records and who made the first call and that sort of thing. There didn't seem to be a citation in your brief where we find that. And I apologize for that because the demonstration of that evidence is in the declarations filed post-conviction by the defense counsel, that they kept coming up. Well, I should take a step back. And that's attached in the appendix to your brief? The declarations are, yes, Judge. All right. The... Well, I should take a step back in that Judge Matz ordered after conviction, after verdict, that the government produce these phone numbers that Mr. Hernandez was using to contact JASIS. And as the court would read the record, it took some time and some coaxing by the district court to get the government to produce these records. And when they finally did, I believe their declaration that's in post-verdict litigation is that after March 04, they counted 169 phone calls from Hernandez to JASIS. I am not sure, as I'm not a phone expert... I'm sorry. Which period? After March, and I think they went six months. Their declaration covered a review of the phone records from March, I guess it was to October. Judge Matz says 28 calls between April 1 and April 15, the CIA placed the defendant did not appear on the records. 14 occurred after the drug transaction. Is that right? Yes, Judge. Now, we have to go even further back and look at Nichols' testimony as to when this started. This is a call coming from 760-208-5430? Yes, Judge. But again, then it comes out that Mr. Hernandez had various phone numbers that the defense did not know about at trial, and they were not made privy to at trial. I think up to the day of sentencing, the defense was able to discover another phone number that Mr. Hernandez used. We also know now... Did the government have that information at the time of trial? I can't speak to that, Judge. They only introduced... Is that critical to your case as to whether they had it in order to be able to disclose it? The thing Paul Brady requires is that you disclose the information that you have available. It becomes critical when they decide to put Nichols on to testify about this phone summary, which was inaccurate, because it would have the jury, and the jury did believe that the first call was made by Chase's, and the first call was made sometime April 1. And it also makes the jury believe that seven times Chase's called for Petto in March. Well, okay. Let's take that specific. You said it makes the jury believe that the first call was made by Chase's on April 1. Yes, sir. You said both of those things. And the suggestion is that you have some evidence now that, in fact, Hernandez made the first call to Chase's, and it happened sometime before April 1. Yes, Judge. Okay. Where is that? First, it starts with Nichols' testimony that on March 23rd, they make Chase's the target, and he tells Hernandez to start calling them. There was post-conviction evidence of the phone calls that Hernandez is making to Chase's friend trying to find Chase's, Sheller, that are all made in March. At trial, the defense couldn't show that, because they didn't know about them. So I ask you a simple question, which asks for a location of a piece of evidence in the record. I don't want a narrative. Where? Hernandez's complete phone records. Well, I have Hernandez's phone records for 760-208-5430, and it starts, as best I can tell, on April 1st. This is on page something called Exhibit 1, and it's got a number 302. Is there something else? Is there something that shows Hernandez's phone records before April 1? They're in the post-trial declarations of the defense counsel where they discover the second Hernandez phone call, which I think is almost the first post-trial phone call. Is that in the excerpts? Is that in the excerpts? I apologize. I should have had this marked. Of course you should have. What did you think we were going to talk about today? I'm sorry? I did not bring our post-trial declarations, Judge. But I think in the argument for a motion for new trial. I don't know what's the point of having this argument if you can't talk about evidence in the record. I mean, you know, we have your brief. It's not very helpful. It omits this kind of specific detail. And the point of showing up for argument is to be able to answer questions like this. Now, I, you know, I can read the cases. I don't need your help. What I need your help with is what is the case that you want to make for your client? Where is the evidence? Where is the piece of paper that you can point to and say if we'd had this at trial, here's how we would have used it? If you can't do that, you're not serving your client. Mr. Chase's position, Judge, is that the jury heard inaccurate information in the evidence that was produced at trial. Okay. Prove it to me. Show me the piece of evidence that contradicts what was said at trial or the piece of evidence that was produced after trial that shows a support for his position that isn't, that isn't what could be presented because the government didn't produce it. The defense counsel after conviction, Judge, made several attempts to, in fact, during the trial. I don't want a narrative. What I would like is a reference to something in the record that shows me a phone call going from Hernandez to Chase's dated sometime before April 1st. Okay. If you can provide that very specific piece of evidence, then we have something to talk about. That would tend to support the statement that the government lied when it said the contact was initiated by Chase's and that it was initiated on April 1st. Okay. So what you want to say is, here, we got some records after trial, and, aha, here is the list, here is the evidence of a phone call going from Hernandez to Chase's, right? I understand the question. That's how it would work. And then I would say, boy, that looks pretty bad. You surely must have been prejudiced, but it was in your brief, and you're not prepared to present it now. As far as I know, it doesn't exist. How on God's earth do you expect us to find prejudice here? To be more specific, counsel, how on God's earth do you expect us to reverse, as an abuse of discretion, a district judge's finding of lack of prejudice? A judge who sat and watched the entire trial, saw the evidence come in, saw your client testify, made certain findings based on his demeanor and the like, and he found a lack of prejudice. Now, you know, I'm willing to look, I'm willing to consider, as I'm sure my colleagues are, but you've got to present us facts. You've got to present us something more than, you know, we could have done better. Judge, the post-verdict discovery of phone numbers by defense counsel through subpoena and through government disclosure. Where is that? Again, Judge, I apologize. And what does it show? It shows that the jury was not shown all of the phone calls from Hernandez to Chasis that would have supported Mr. Chasis' entrapment defense as to inducement and as to the absence of predisposition. The ---- How do I confirm that what you're saying is true? If I had been smart enough, Judge, to bring the ---- It's not a matter of being smart enough. It's a matter of doing your job. I understand that, Judge, and I apologize. I should have had the declarations that were filed by defense counsel after trial and also the declaration of the government after trial that showed the additional phone calls in addition to the calls that were heard by the jury trial. Let me ask you a simple question about that. Do the declarations of counsel, the argument that the declaration of counsel will show that the frequency of the calls constituted nagging and importuning and or that something in that declaration will contradict who started this dialogue? It's a mixture of both, Judge. We think the volume of calls that occurred were far more than this jury heard, and we think that the discovery of this postconviction, which I think I can also safely say the district court realized there was a problem by the orders that it imposed upon the government to produce these additional phone numbers. Remember that at trial, Detective Niccolo remembered no calls from the DEA office and no calls from any reason for there to be any blocked calls. Posttrial, it was discovered several months after conviction that some of the calls actually did originate from the DEA office and would have come up blocked because they were coming from a government phone number. Let's look. How many blocked calls were there? I looked at Mr. Chase's phone records. Do you know where that is? Yes, Judge. It's page 227 of the excerpts. Well, Judge, again, it would not be our position that there were numerous and numerous on top of blocked calls. It's just that the jury heard. In fact, the government argued to the jury, why would Mr. Hernandez make it? Let me just complete my thought. If you attribute every one of those calls to Hernandez, you've got three more calls altogether in the two-week period between what the government claims was the first contact and the time that Chase provides the drugs. I think three, four at the most. So in answer to Judge McKay's question, that would not show. All the calls from Hernandez had to have come in on Chase's telephone line. He didn't have a second phone or something of that sort, right? At one point he had a second phone number. I don't know that the evidence was clear how many times Hernandez called that or if he did. There were two phone numbers. But the idea about the blocked calls is that the government made the argument is that there were no blocked calls. Let me just make sure I understand. Are you saying there's evidence that some calls from Hernandez came in on that second line? I was answering the question if he had a second phone. No. The evidence is. Okay. So we're limited to this one phone. So if he got calls, he got them on this phone. There are three, four types of calls that come in on this phone, right? There's a regular call where he picks it up and he gets charged that shows the phone number, incoming call that shows the phone number, right? Yes, sir. Then there are incoming calls that he picks up that are blocked. And that would just say comes from a blocked number. Yes, sir. Right. In addition to that, there are calls that don't get picked up that go to voicemail, and those wouldn't show up on his bill, right? No. They don't. Right? No. You disagree with me or you agree with me? Voicemails, yes, show up. I'm thinking the text messages probably don't show up. You know, probably is not good enough. So voicemail messages would come in, would be on this bill, right? They'd be denoted. So the universe of calls, except for text messages that he could have gotten from Hernandez, all have to be on this bill, which starts at page 227 of Vex's record. Is that correct? Yes, Judge. So if we're going to see a pattern of harassing conduct of a series of phone calls that tend to establish that your client was goaded into doing something that he was not predisposed to do, it would have to be on these pages. Yes. Okay. So why don't we turn to those pages. Can you tell me which phone calls qualify for that treatment? And then let's see which ones of those you could not have figured out or counsel, whoever represented him before trial, could not have figured out before trial. Well, we have to start with the proposition, Judge, that at trial, the defense counsel didn't know all of Hernandez's phone numbers because they were not provided. And that the only evidence heard by the jury at this trial. I understand that's an issue, but why is it an issue? I mean, your client can tell when he's called his mother, right? Yes, Judge. So he can exclude that phone number from the list. I assume one of these or some of these must be mom. And he can pretty much exclude his best friends and his college buddies and things of that sort. He recognizes those numbers. And that would leave a certain series of numbers that he could say, gee, these are unidentified. Right? Yes, Judge. Okay. Do we know how many numbers like that there are on this list? If we exclude all the people that he would normally have called without being involved in this activity? I did not count them, Judge, no. Okay. So what is your case here that your client was prejudiced? Believe me, I think what the government did here was pretty awful. And I mean, I think what they did was sort of unforgivable. But if there's no prejudice and you have a strong finding by this three judges of no prejudice, you know, your job is to show prejudice. This is why you're here. I appreciate that, Your Honor. And it's our position that if this jury would have heard of all the phone calls that the defense had given the time by the trial court to establish. I want to believe you. I want to believe you, but you are giving me nothing to help me do that. If this evidence is somewhere in the record, you have managed to hide it from the three people in the world who can help your client. Could I ask the court to consider the government's own declaration where they. If it's in the record, we can consider it. Where they find, and I believe it was filed in May of 04, where, again, they counted the 169 phone calls. And it's obvious from reading the record, jury heard no such number. And although they make the argument in their brief. I'm sorry. 169 phone calls. From Hernandez, two chases over this period in 04. Well, the question is what period. The only period that really counts is it stops on the 14th, right? Well, Judge, our argument. The transaction happened on the stop happened on what date? It did. The transaction happened on the 14th. Okay. So anything that happened after the 14th could not have been inducement. I would respectfully disagree, Judge, because I think it establishes a pattern of the government behavior in trying to induce Mr. to chases to commit this crime. Now, I understand that, that the 14th, the crime's committed. But the pattern and the velocity and the volume of phone calls that even occurred after that. No, I completely don't get it. They've gotten what they want. They've gotten him to do what they want. They have caught him with this stuff. What conceivable, if anything, continuing to call him suggests that they're not the government? I mean, the government would have gotten what they want. Why on God's earth would they go calling him again and maybe help destroy their case? What conceivable relevance would the government have if that's what happened? They trapped him to keep calling after that date. Well, I can't answer that specifically, Judge, as I can't speak for the government. But we know it did occur. In fact, all of the courts felt. But you have to stand before a jury and say, okay, look, we have this pattern of calls. And let me explain to you, ladies and gentlemen, the fact that they kept calling even after he got arrested tends to also prove that he wasn't trapped. And you go ahead and tell the ladies and gentlemen of the jury why those calls after he got stopped tend to show him trapped. Well, one, he didn't get arrested on April 14th. He was only detained and released. And apparently the government was not satisfied. That's the day that he was in the car. April 14th, they seized the drugs, but they released him in repedo. But the important thing is not the seizure. The important thing is that by that date, he had procured the drugs. He had committed the crime by that date. Yes, Your Honor. Okay. So whatever entrapment there was going to be would have had to happen before. So somehow you have to say, well, calls afterwards somehow tend to prove by some relation back entrapment that happened before. Well, that's what we're asking this Court to find, that the number of calls, even the calls heard by the jury that all occurred after April 14th during trial, is evidence of the great lengths that the government went to to induce and entrap Mr. Chasis. Well, not to beat a dead horse, but the trial court said defendant's own testimony, quote, buried, close quotes him with a footnote. After the jury returned its verdict, the court characterized defendant's testimony as utterly lacking in credibility. The court said this was implausible. It was highlighted by cross-examination. It was the court who sat there said this is ridiculous, that this is going to have made a difference. Well, I concede the fact that the court had troubles with Mr. Hernandez, Mr. Chasis's demeanor on the witness stand. I can only answer that Mr. Chasis answered the questions that were asked to him, told the truth. He didn't deny this crime wasn't committed. He admitted it as what he did. He also admitted that he heard from Mr. Hernandez 30 or 40 times prior to the transaction and that he did not. And the State's own witness testified, Rapetto, said I didn't hear from Chasis until April 7th. That's not what the government argued to this jury. The government's argued to this jury that Mr. Chasis is making this call to Mr. Hernandez way before that. But their own witness said I didn't hear from Chasis until April 7th. Is the supplemental declaration that you don't have the declaration of L. Joyce Delaney? It's in the declaration, Judge. Okay. Because that's what he says, I've considered that, and it doesn't change anything. Yes. That's after the defense found even more phone numbers and phone calls to Mr. Chasis. Thank you, counsel. I apologize to this Court if it believes that I was not ready to make this argument. You know, the people you need to apologize to are your clients. I hope you don't plan to charge them for the time you spent here today or for preparing for this, because you weren't very much help to your client. Thank you, Justice. We'll hear from the government. May it please the Court, Ilana Artson on behalf of the United States. Hi. Let me begin by saying my concern is defined. I don't see that the Court considered any of the 3572 factors. And you are correct that there is no explicit indication in the record that the Court considered those factors. I can't even find anything implicit. It seems the judge thought he cheated the public defender's office, and so he was going to get back at him. I can't find any substantial evidence to support his findings. Nothing. I mean, even if he had considered the factors, I mean, the defendant doesn't have a job. He doesn't have any money. He qualifies for public defender. Nobody withdrew or found that he perjured himself in any way in obtaining it. I mean, I'm just completely out of the blue and wholly unsupported. I mean, you're not going to support the fine, are you? Your Honor, what I would argue is this is the basis upon which the district court's finding could be supported.  You know, the government confesses error when it believes that the trial court has done or sometimes when the court of appeals and the Supreme Court of Solicitor confesses error on occasion. But there's no basis here for the finding. I mean, how would you find that Mr. Chasis was not entitled to a public defender? Where's the evidence? Well, the issue as to the fine is separate from whether he was entitled to a public defender. Well, but the district judge premised the fine on the fact that he somehow got a free lawyer when he – that was his only reason. That's the only reason. So that's a fact. That's a fact that has to be supported by evidence in the record. And what is the evidence in the record? And I would agree that that is not a basis upon which the district court can impose a fine. The district court can impose a fine. And it's the basis the district court used. The fine is toast. You're going to make a lawyer's argument to us. You're the judge. What would you decide? This is good? I'll tell you what I think was before Judge Matz. This is the kind of issue that you need to take up before you show up in court and see – talk to your superiors about confessing error before you write your brief. You know, if it's wrong, it's wrong. And you don't help your credibility, especially in a case where the government behaved as poorly as it did at trial here by trying to support something that's wholly and – I mean, there's no possible support for it in the record. You don't have to defend everything, no matter how foolish. Your Honor, I – I will certainly take that up with my superiors. I – You think this is defensible? I think that I can present what was before the district court that could support this fine. Had he used it to support the fine, which he didn't. Well, this Court has never required that a district judge set forth explicitly considerations of the fine factors. And the Court has also found that in other situations involving restitution, as well as in Quangera, which specifically refers to fines, that if the information is before the district court – And the court considered the factors. And the court said, I read every word of the PSR, I read every word of the letters. What is this restitution for? It's not restitution. It's a fine. You said restitution. No. What I'm suggesting is that this Court has held in the restitution context, as it has held in the fine context, that the court does not have to recite its consideration of the relevant statutory factors. That if the information is before the court in the PSR – If he says, I'm doing it because it's Tuesday. I would agree that that's improper. And if the court concludes that the only reason that that comment should be read is the only reason the court imposed this fine is because he didn't think that the defendant was entitled to a public defender, I would agree that that is an improper basis and the court should reverse. But that's it. That's it. The probation report didn't even recommend it. And the judge says, here's why I'm doing it. The court also had other information before it that would support the fine. The court didn't say that's why I'm doing it. And it wasn't required to. That's your problem, it seems to me, counsel. He wasn't required to. The problem is he did. I assume it was a male judge. The trial court did find that that was the basis, and so we're stuck with the record that we can't apply the usual presumption that the judge considered all the evidence that was before the judge when the judge tells us why that judge has made the decision. And isn't that the problem you've got here? And if that's the way the record is to be read, then I would agree that that fine is not supportable. But there was evidence before the court which could support the fine. And that was? That was evidence that the presentence report, which the district court had read, contained information about this defendant, showing that he had a great deal of education. He had a college degree. He had run his own business. He had a number of different skills. He was a building manager for his mother's properties. He had skills in computer repair. He had the ability to pay. It doesn't justify imposition of the fine. It just shows one of the requirements is imposing a fine that you can pay. And you can't impose a fine at all, no matter how justified it is on any other ground, if the defendant cannot possibly pay it. So all this does is satisfy the can he pay requirement. But where's the justification? Not everybody who can pay gets fined. That's a necessary but not a sufficient requirement. See, this is why this is the kind of thing you need to take up with your supervisor before you file that brief. But I want you to talk to me about these phone records. I'm not quite so sure, despite counsel's really poor showing today. I'm not convinced that the case wasn't prejudiced. But is there any excuse for the government's failure to come up with Hernandez's name long before trial? Your Honor, the district court found that the prosecutor had engaged in shockingly sloppy practices. And there isn't Is the prosecutor still in your office? Yes, she is, Your Honor. Has she been disciplined? Why didn't she come? Your Honor, this is not in the record, but I will tell you honestly what happened. I am a member of the criminal appeals section. I was assigned to review this brief. I read the brief and I approached my supervisor and the front office and said, given these allegations, it appears that this is the type of case where somebody else from the office should thoroughly review the record and be in a position And I wouldn't prevent her from sitting there and listening to this or coming to court and being present to face us. Has there been discipline taken because of this? Your Honor, I don't know the answer to that question. I'm not a supervisor. I don't know exactly what, if any, discipline has been taken in connection with this. You will ask your supervisors to let us know an answer to that question, will you not? Yes, I will, Your Honor. I will as soon as I get back to my office. Tell us the givens of the shocking and excusable conduct. She knows Hernandez is going to be, if there's a trial, Hernandez is going to testify. She was asked months before trial, certainly much more than a month, for Brady information. And she's not given that information. She's not told the name of the informant, so she can't go and subpoena his records, which is why Hernandez's records don't show up until after trial. Had she provided the information on the informant, then defense counsel could have gotten the phone records, right? And had the government provided a list of all the phone numbers used by the informant to call chases? That is correct. But the district court found Do we now have a full list of phone numbers that the informant used to call chases? Yes, we do. And, in fact, at trial One of them was discovered later on. You guys provided a list, and it turned out to be the list was incomplete because they used the phone in the office of the VA office, right? Correct. Let me try to answer your questions one at a time because I agree that it is very confusing. With the Court's permission, I'd like to take a few minutes to walk the Court through what was presented at trial. Please. And what exactly was presented after trial so that the Court can make that determination. Absolutely. I'm a bit of a visual thinker, so I am looking at GER page 255, which is Government's Exhibit 39, and that was a summary of the phone records that were presented at trial. This is what you call the massive telephone chart? No. No. Okay. I am at 255. Page 255 of the Government's Excerpts of Record, summary of Exhibit 38. That was actually an exhibit at trial that summarized the phone records that were admitted at trial. These phone records consisted of Defense Exhibit 102, which were defendant's cell phone records going back to December 8th of 2003, which is about three months before this transaction began. And some of those records are included at GER page 258. So we have defendant's cell phone records going back to about three and a half months before the transaction. I'm sorry. This starts at page 237 of the excerpts? This is the thing called Brennan A. Chases, right? Statement 4, mobile number 858-405. I'm sorry. What page are you on? 227. Okay. What starts at page 227 are the phone records that were introduced at trial. But we haven't actually included every page in the excerpt. I think we may have only included a subset. And they go back a bit before that, right? But introduced at trial, introduced for. But you provided. Between the defense and the government, there were defendant's phone records going back to December 8th of 2003. Right. Those calls show as set. And when were those provided? Well, the defense actually had, as a defense exhibit, the defendant's phone records going from December 8th through the beginning of March. Those were his phone records. Those were his own phone records. He had up through the beginning of March. Okay. The government introduced phone records that went from the beginning, you know, from that end date through the time of the transaction. And that evidence, which was Government Exhibit 38, was actually introduced not in the government's case in chief, but during the defense case when the defense called Detective Nicklow. But you were looking at page 255. Correct. And what ñ who put this together? Page 255 was an exhibit at trial. It was Exhibit 39 at trial. Yes, but who prepared it? It was prepared by the government. So this is government's work product. Yes. But it was an exhibit at trial. No, no. I understand. But the point of the defense is to deconstruct things put in by the government. This is not primary evidence. This is the government's summation of certain evidence, right? Right. Where are the underlying documents? The evidence is Exhibit 39. Like, for example, if the defendant wanted to say, look, this is not right, although 4-1-0-4 at 5-4-9 p.m. Chase got a call from Hernandez. Where would they dispute that? The phone records themselves, which are Exhibit 38, is starting at page 189 in the government's excerpts of record. So if you want to go back and check to see if this is accurate. You know, what's your point? The point that I want to make is that the new evidence did not show any new calls from Hernandez to the defendant prior to April 9th. That was the first call. Well, how about this Exhibit 1 on page 302? 4-9, this is calls from 7-6-0-2-0-8-5-4-3-0. There's a call at 0-4-0-9-2-37, 2-57 p.m., a call to Chase's. There's a call at 3-0-9. There's a call on the 12th at 10-43. There's a call on the 13th at 2-55, a call on the 13th at 2-57, a call on the 13th at 2-58, a call on the 13th at 3 o'clock. What about these calls? What that shows on page 302 is, as Judge Matz described in his order, there were 13 additional unanswered calls between April 9th and April 14th from Hernandez. That's the totality of the new evidence. Of those 13 calls. And the evidence is clear that they were not answered by the defendant. Correct. But we don't know whether there were voice messages left, and they would not show text messages. So each one of these could be a lengthy voice phone message, hanging, or whatever, right? What the evidence acquired after trial also showed is that. I'm asking a question. Yes or no? Well, these could be voicemail messages. Correct. Okay. And the messages could be haranguing voicemail messages, for all we know. It is not simply the phone rang and nobody picked up the phone. That's what it is. No, it's either the phone rang and nobody picked it up, or it's a voicemail message. It's one or the other. One or the other. It's not a text message. It's a voicemail message. It could be a voicemail message with a click, or it could be a voicemail message with a lot of haranguing content, right? Correct. Okay. Of those 13 calls, eight of those calls occurred on April 13th, between basically the hours of 3 and 4 p.m. There was testimony at trial, that is at GER 69 to 70, where the case agent testified that on that date the CI left several voicemails for the defendant on that date. So that evidence, that there were voicemails, was already before the jury at trial. And I would argue that that diminishes even further the probative value of these new calls. There was one, two, three, four, five, within minutes apart, six, seven, eight. I don't know. That could show apparent haranguing. I've seen juries return entrapment verdicts on similar stuff. I mean, how can we tell? The government mucks it up like this. I mean, it doesn't get the records for the informant. Why didn't the government obtain the records for the informant? Why is it declared itself ready to go to trial when it has failed to present, to either provide evidence to the defense or to order the evidence itself, so it makes it available at least? Why put defendant counsel in a position where she has to order the thing, doesn't show up until after trial, and then she has to argue by hindsight whether it would have made a difference or not? I'll try to answer all of the questions. First of all, to clarify the record, what was disclosed prior to trial? And I don't think there's any dispute about this. Most of the phone calls took place on April 13th and 14th. And the government disclosed a ---- We don't know that. All we know is that the calls from this one number, okay, we don't even have anything from the government saying these are all of the phone calls, all the phone numbers that the informant used to call. We do have that now. The informant was questioned on the phone. Well, we have it, and the informant is questioned, and then it turns out he's wrong. We don't ever have a statement, a presentation from the government, this is our position, these are all the phone numbers that, right? The informant gets questioned, and he gets it wrong. No, he didn't get it wrong. He was asked on the second day of trial what cell phone numbers did you use, and he provided those in open court. And we believed him. I mean, use the informant, go to hell. This is another one of those cases. Well, you know, the defense had an opportunity to question the informant in camera. And, you know, that part of the transcript is sealed, so we don't know what transpired. But, you know, clearly if there was some issue here beyond what is now in the record, I think we would have heard about it. I don't think that the informant was incorrect about what he used. The informant stated that he had two cell phone lines that he used, and those were, in fact, the two cell phone lines that he used. There was also a call. You know, when you use a witness like this and you're not super careful on Brady and Discovery, which you know is going to come at you like a caterpillar tractor that weighs 15 tons, this is precisely what you'll walk into. Because you know that Brady is going to just come up with capital letters B-R-A-D-Y. And if you're not really, really careful, you'll get run over by the truck. And that's what we've got here. An AUSA who got run over by the truck. The case has been battered and blasted. All of this. In this case, it seems to me they should have drove the truck and then jumped in front of it. Your Honor. I mean, it's a difficult feat, but it's really some unconscionable conduct. Why not ask for continuance? Just say, look, we're not ready. We did not provide the evidence we were requested to provide. We've put defense counsel in an untenable position in having to order subpoena telephone records out of state on the first day of trial. They're never going to get here in time. And it's our fault, and we are up to it, and we ask for continuance, and our bad. Isn't that the kind of thing that your supervisors in the office should be teaching AUSAs to do? Well, in answer to what AUSAs are taught to do, they are certainly not taught to try a case the way this case was tried. So I certainly don't want to suggest in any way that AUSAs are trained to be dilatory in providing discovery or handle the case the way this prosecutor did. I am not here to defend her conduct. I still remember Kojaian, also from your office, you know, a few years back. And I was told, oh, stuff like that never happens around here. You know Kojaian. Your Honor, I understand your concern. I will represent to you that, you know, the acting United States attorney read this brief. The chief of the criminal division read this brief. They are certainly aware of the prosecutor's conduct. The issue before this Court is whether the conduct prejudiced the defendant. And they are also aware that, you know, clearly people need to be trained to do things properly, and this prosecutor did not do things properly, and it is not how people are trained. I am not here to defend this prosecutor's conduct. Our office is not here to defend this prosecutor's conduct. We are only here to ---- What you're telling us is when she came down and said I want to go to trial, she had not checked with anybody in her office, a supervisor or anybody like that, and so nobody had a chance to tell her, wait a minute. You don't go to trial. You don't put defense counsel in a position of going to trial in these circumstances. You had better ask for continuance. And you're telling us that she just didn't do that. She didn't run the problem by anybody in authority. Your Honor, I haven't asked her that, but I am assuming from what happened that she did not ask anybody that. What did you wrong on that? Counsel, let me just shift to a minor one. Can you tell me whether the record somewhere reflects whether the government had these supplemental numbers in its possession at any time before or during trial? Well, I think what the record clearly shows is that neither party had the C.I.'s phone records prior to trial. There's no dispute about that. And what are you relying on to suggest that the defendant had information that would indicate that it should put out a subpoena, which I think is something argued in the government's brief, in order to discover this information, which the government says it had no responsibility to provide because it didn't have it? Did the defense have any information about who to subpoena and what to subpoena? What does the record show about that? The record shows that the government had provided in discovery a DEA-6, which summarized the telephone calls on the 13th and 14th. What part of the phone record was not obtained was the part prior to the 13th. But we assume that that's, in effect, a representation that they have all the phone records and that, therefore, what they present is going to be a complete package, isn't it? It's sort of what the jury assumes, isn't it? The government presents this as a summary. This is everything. I'm sorry. I don't understand the question. Well, the question is that if the government represented to the defendant that they were going to present a summary of the phone records between the informant and the defendant, that the government had all of those records in order to summarize them. Isn't that true? The records for those two days, for the 13th and the 14th. And the defense did not request those records, specifically the actual phone records, until the first or second day of trial. And there is, you know, I would submit that those phone records are not Brady material. The underlying phone records of the defendant are not Brady material. That's not the contention. The contention is that it's the informant's information that's Brady material. And how would she have gotten that before trial? She doesn't know the name of the informant. She doesn't know the name. But she has a phone number. Exactly the same way they found out that the DEA line from which the informant called and made the recorded call was not a blocked number, because they went and did a reverse phone search, put in the phone number, and it came back to the DEA office. So if that's the case. But counsel, when you've been told, when counsel has been told in advance that the government and the court has been told that you're going to put in a summary of the relevant phone conversations, that doesn't seem to me to be noticed that the defendant has got to subpoena the stuff that you say you have, that the prosecution says it has on hand. Isn't that the problem here? No, I think the problem is that there were other records that they wanted to use to impeach the records that we had. And that is their right to do. And they can go ahead and subpoena those records. And if they wanted to call Mr. Schellert as a witness to say that the informant made a number of many phone calls to me prior to March 24th, they could have called him to do that. They didn't need the government to give that information. The defendant already said we're going to summarize them. This is we have all these records. They, in fact, imply that what they presented was a complete record of the interchange. Isn't that what they represented to the court and to the defendant? I would submit not. I'm saying we're going to summarize it. I would submit that it's what it is, that those are the – that's a summary of those records. Again, I am not here – How would they know which record, which number to subpoena? Look, for example, page 238. At 4-0904, there's an incoming call at 310 p.m. from 760-208-5430. It is surrounded by a bunch of other numbers, 760-484-3442, 208-5430, and so on. Do they subpoena the phone records of everybody on the phone bill? Excluding maybe mom and, you know, best friend or something? I don't know. I mean, how do you proceed? When the government knows, has this information, has information as to who the informant is and what forms he used. I mean, do we play hide-and-seek? Your Honor, I think what Your Honor is getting to, and I agree, is that this is not the way this case should have been prosecuted. But ultimately, what this Court has to decide is did the district court err when it concluded that the defendant was not prejudiced in a manner that warrants a new trial. And the district court here was privy to all of the defendant's failings, to all of the prosecutor's failings, to the defendant's testimony, and went through with a fine-toothed comb all of the information that was presented after trial, which showed that there were 13 additional phone calls, which showed that the DEA line was not a blocked number, and which showed that there were a total of four text messages. But you can block any number. But again, the contention You can block any number, right? So we don't know whether or not the call was made from there, right? But that's your point. The district court was there, heard the case, and didn't abuse its discretion in arriving at this conclusion. Correct. But this is important, because without the phone records of the DEA phone, we don't know how many times it was used to call. You do have the phone records of the DEA phone. They're in the excerpts of record. Well, no, they're not. That's everything that the government only calls the chases, only calls. I mean, it's not the full This is the 7602085430 number? If you look at excerpts of record 324, that's the bill for the DEA line. There were two calls on April 26th and April 29th to chases. One of those was the recorded page 324. My excerpts, oh, this is wrong. It's 9-2. 324, huh? Okay, I'm sorry. So what am I looking at? Those are the records of the DEA undercover line that were used to make the recorded call Exhibit 8 at trial. These are all the calls made from this phone? Well, during that relevant time period. So it was not used to call anybody else. This is the bill, and this is what it looks like. No, some of these were calls to other people. There are two calls to chases on 426 and 429. One of those calls, the 426 call, was introduced at trial. That was Exhibit 8, and then there was another call on 429. Those are the two calls from the undercover line to chases. I'm sorry. That's it. But what period does this phone bill cover? The dates that are listed there. It looks like it's 426 to 5. Okay, so this is a period that the actual seizure was on the 14th. Correct. So do we have anything in the period predating the seizure, which is, of course, a period where it mattered? Right. There were no calls to chases from the undercover line. You say so, but forgive me if I don't believe you. What is there to prove that? Do you have the bill showing no calls? The records were provided in camera to the district court, and I personally did not review them. The prosecutor who handled the case reviewed them, and these were the only calls. So they were provided to the district court in camera to protect the information on the phone bill. Correct, Your Honor. Okay. And I just want to get back to one question that Your Honor asked, and, again, I am not here to defend the manner in which this case was prosecuted, but the district court, who was aware of all of these failings and all of these problems, made a call and said to the defense, you know — The district court seemed to be more concerned with the fact that jurors had shown up when there was winds in Los Angeles and a great risk to themselves. Now, I don't understand what would have been the big problem with delaying the trial a week to, you know, when the government discloses their evidence on — discloses the name of the informant on the day the jury is to be selected. I don't understand what would have been the problem in saying, well, that's a little late, and the government doesn't have a very good explanation, and the way we deal with this, we're going to give defense counsel more time because we want a fair system. We don't want a system where people get ambushed. So I don't know that I'm so impressed with how the district court reacted to the misconduct that unfolded before it. And ultimately, the question is, was the defendant prejudiced? And the bottom line is that we still have not heard, and these records do not show, any evidence that really undermines or undercuts the entrapment defense, because we have not seen that there was any calls or contact prior to March 24th, which is the date on which the agent testified that he first met with the informant about this defendant. And incidentally, the defendant also testified that he saw the informant on that date. So while I agree with Your Honor that the district court could have dealt with it a different way, each one of the decisions that the district court made here, I would submit, were not an abuse of discretion and the defendant was not prejudiced. Thank you. Do you have that phone number? Do you have that phone number I asked you for? That evidence I asked you for? I cannot show the court today calls prior to 4-1. I can only rely on the exhibit C and D record, page 91, that the defense counsel filed in the trial court showing the additional calls between Hernandez and Chases, which she argued showed that Chases did not make the first phone call in this scenario. The other thing I wanted to point out is that the summary records in this trial is the summary that was given to defense counsel and the trial court allowed her 15 minutes to review. What's crucial about that is that obviously the first seven or eight phone calls look to be Chases to the source of the drugs in L.A. If counsel had been given enough time to review these with her client, they could have established that Mr. Chases was not calling Jason Rapetto, that Jason Rapetto said he didn't call him, but also that Chases, Rapetto's roommate, was an acquaintance and a friend of Chases. They would have been able to turn the inference that Chases is already calling the source of the drugs on March 24th, when, in fact, he was not. You leave with that exhibit as it was prepared late? This is the summary of the exhibit that was given to defense counsel on the second day of trial, and she asked a continuance to review it, and the judge said he gave her 15 minutes to review it, and then Nicholas testified to it. Thank you. Okay. Thank you.
judges: McKay, Kozinski, Trott